UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
WILLIAM J. MURRAY III,

                Plaintiff,

      - against -

NAZARETH REGIONAL HIGH SCHOOL
F/K/A NAZARETH HIGH SCHOOL, ROMAN
CATHOLIC DIOCESE OF BROOKLYN,
XAVERIAN BROTHERS USA INC A/K/A
CONGREGATION OF ST. FRANCIS
XAVIER,
                Defendants.
------------------------------------------------------- x

**MEMORANDUM & ORDER**
Case No. 20-CV-1471 (RJD) (RML)

DEARIE, District Judge

      Plaintiff William J. Murray III brings this negligence action against Nazareth High School ("Nazareth"), Xaverian Brothers USA ("Xaverians"), and Roman Catholic Diocese of Brooklyn (the "Diocese"), alleging that defendants are liable for the repeated sexual abuse plaintiff experienced at the hands of George Gardiner, a now-deceased member of the Catholic clergy also known as Brother Barton.

      On August 25, 2021, we granted the Diocese's motion to dismiss plaintiff's First Amended Complaint, allowing plaintiff to amend one final time. ECF No. 60. Plaintiff filed his Second Amended Complaint ("2AC") on October 8, 2021. ECF No. 65. Although Nazareth and Xaverians answered the Second Amended Complaint, see ECF Nos. 66, 68, the Diocese again moves to dismiss pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) for failure to state a claim for relief. See ECF No. 77. The motion is GRANTED.

## BACKGROUND

      Plaintiff claims that he was first sexually assaulted by Brother Barton in 1965 after they were introduced at Camp Calvert, a Catholic summer camp located in Maryland. 2AC ¶¶ 48, 50.

At the time, plaintiff was twelve years old. Id. ¶ 50. In 1967, plaintiff alleges, Barton took him to New York where Barton sexually assaulted plaintiff and took hundreds of nude and/or pornographic photographs of him. Id. ¶¶ 51-52. Plaintiff claims that this abuse took place over the course of three to four weeks at locations "owned, operated, and controlled" by the Diocese, specifically Barton's church-provided living quarters and the Nazareth campus. 2AC ¶¶ 51-54.

Plaintiff initiated this action in 2020. In 2021, I granted the Diocese's prior motion to dismiss on the grounds that plaintiff failed to adequately plead that the Diocese owed him a duty of care. ECF No. 60. After being granted a final opportunity to amend his complaint and correct this defect, plaintiff now attempts to impose a legal duty on the Diocese, alleging that: (1) because he was a "student" of Barton's, he was a student of the Diocese, despite not being enrolled in any of its institutions; (2) the "duration, frequency, and location" of Barton's sexual assaults provided the Diocese with actual or constructive knowledge of plaintiff's physical presence on its property; and (3) Barton's employment history combined with the Catholic Church's pattern and practice regarding sexual abuse provided the Diocese with actual or constructive knowledge of Barton's pedophilic history. See ECF No. 75 at 11-14. For the reasons described herein, these allegations are factually insufficient to state a claim for relief.

## DISCUSSION

### I. Failure to Give Fair Notice to Individual Defendants under Rule 8

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). This standard is not met "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." Id.

The Diocese argues that plaintiff's Second Amended Complaint fails to comply with Rule 8 because it resorts to "group pleading" and does not allege any direct wrongdoing on the part of the Diocese. ECF No. 77 at 13-14. I agree. Other than the sections in which plaintiff describes the structural relationships among the parties, all but two allegations are made against the "Defendants" as a group. This was plaintiff's third attempt.[1] The fact that he has still not made particularized allegations as to what the Diocese knew and how it acted negligently is telling. Accordingly, plaintiff has not satisfied the Rule 8 "fair notice" standard.

## II.     Failure to State a Claim under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While a court must accept as true the factual allegations contained in a complaint, this principle is inapplicable to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a motion to dismiss. Id.

Plaintiff asserts three claims in his Second Amended Complaint: negligence, negligent retention and supervision, and gross negligence. All three claims are dismissed for failure to state a claim under Rule 12(b)(6).

*(a) Count I: Negligence*

---

[1] Plaintiff filed his original Complaint on March 19, 2020, ECF No. 1; his First Amended Complaint on September 11, 2020, ECF No. 41; and his Second Amended Complaint on October 8, 2021, ECF No. 65.

Plaintiff asserts a negligence claim against the Diocese, alleging it is liable under New York law based on two theories: (1) a school-student relationship between the plaintiff and the Diocese and (2) the Diocese's duty as a landowner to keep its premises safe.

In New York, schools owe a "special duty . . . to students[,] requir[ing] a school to act when a child, while in its charge, is threatened by the negligence of a third party, and it must make reasonable efforts to anticipate such threats." Pratt v. Robinson, 39 N.Y.2d 554, 560 (N.Y. 1976). As such, schools "will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." Mirand v. City of New York, 637 N.E.2d 263, 266 (N.Y. 1994). This duty stems from a school's physical custody over its students, Pratt, 39 N.Y.2d at 560, and does not extend to non-student minors, see Reno v. Churchville-Chili Cent. Sch. Dist., 148 N.Y.S.3d 683, at *2 (N.Y. Sup. Ct. 2021).

Plaintiff now proffers a five-pronged argument in his attempt to assert that he was a student of the Diocese, triggering this special duty: (1) Nazareth was under the sole ownership, operation, and control of the Diocese at the time of the abuse; (2) Barton was an employee of Nazareth and thus the Diocese at the time of the abuse; (3) the Diocese represented Barton to plaintiff and his parents as a trusted clergy member with the responsibility to teach plaintiff; (4) plaintiff entrusted himself to the custody of Barton and the Diocese; and (5) Barton acted as plaintiff's teacher and spiritual advisor at the time of the abuse. ECF No. 75 at 11-12.

The first two allegations provide no new information to alter the outcome here: the Court construed Barton as an employee of the Diocese in the prior dismissal. ECF No. 60 at 5. As to the remaining three, the Court is not convinced that these allegations plausibly support an inference that plaintiff was the Diocese's student. Plaintiff does not describe a single interaction between himself or his parents and any member of the Diocese nor claim that he or his parents

4

were aware of the Diocese, or of Barton's affiliation with it. Even accepting that Barton acted as plaintiff's teacher or advisor, plaintiff was never an enrolled student in any school or institution within the Diocese, so the Diocese did not have physical custody over him. In sum, plaintiff has not alleged facts sufficient to suggest that the Diocese owed him a duty of care based on a school-student relationship.

Plaintiff's claim of premises liability similarly fails. Under New York law, landowners have "a duty to maintain their property in a reasonably safe condition." Peralta v. Henriquez, 790 N.E.2d 1170, 1173 (N.Y. 2003). This duty may extend to controlling the "foreseeable conduct of third parties on the property to prevent them from intentionally harming or creating an unreasonable risk of harm to others." Jaume v. Ry Mgmt. Co., Inc., 769 N.Y.S.2d 303, 304 (N.Y. App. Div. 2003).

Plaintiff argues that the Diocese was aware or should have been aware of his presence on its property considering the "duration, frequency, and location" of Barton's sexual assaults. 2AC ¶ 53. However, plaintiff specifies only that the abuse occurred on the Nazareth campus "multiple" times over three to four weeks. Id. ¶ 55. In the 2021 Order, we found that plaintiff's allegations indicated he was "an unknown outsider to the Diocese" considering he did not reside there, was not an enrolled student, and never met or identified himself to any Diocese employee other than Barton. ECF No. 60 at 7. Despite the Court pointing out these shortcomings, plaintiff makes no new allegations by which the Court could find that the Diocese had any knowledge of his physical presence on the Nazareth campus premises at the time of the abuse.

Plaintiff also attempts to assert that Barton's pedophilic abuse should have been foreseeable to the Diocese. The Complaint alleges that Barton's assignment history of "frequent/multiple transfers and short stints" should have raised suspicions that Barton was a

5

child predator and the Diocese "knew what it may mean" when a brother arrived from a different school without a "clear, non-nefarious explanation for the move." 2AC ¶ 22. Yet plaintiff provides no basis to support the assertion that multiple transfers are suspicious, says nothing of the explanation proffered for these transfers, and does not clarify how many transfers is unusual. Accordingly, plaintiff has not adequately alleged that Barton's harmful conduct was foreseeable to the Diocese, so his negligence claim rooted in premises liability must fail.

*(b) Count II: Negligent Retention and Supervision*

Plaintiff's claim of negligent retention and supervision based on the alleged employer-employee relationship between Barton and the Diocese fails for many of the same reasons as plaintiff's direct negligence claim. In employee sexual misconduct cases, New York courts have held that an employer is only liable for negligent supervision if aware of specific prior acts or allegations against the employee. Doe v. Alsaud, 12 F. Supp. 3d 674, 680-81 (S.D.N.Y. 2014) (applying New York law). Plaintiff, however, does not identify a single allegation made against Barton prior to 1967.[2] Additionally, plaintiff alleges that the Diocese neglected its duty by "failing to notice the concerning relationship Barton began having with plaintiff" and "failing to make reasonable decisions about whether or not to retain and/or report Barton" once it knew of his inappropriate behavior. 2AC ¶ 97. But, as recited above, plaintiff has not sufficiently pled that the Diocese was aware of his existence or Barton's misconduct before or during the time of the alleged abuse.

Finally, the Court already found plaintiff's broad allegations regarding church practices and Barton's employment history insufficient to support a negligent supervision claim. ECF No.

---

[2] Plaintiff references a publication by Xaverians naming Barton as the subject of a "credible" allegation of sexual abuse during the mid-1960's, but that incident was not reported until 2013. ECF No. 78-2 at 12.

60 at 10. As plaintiff's new Complaint does not make specific allegations as to the Diocese's knowledge of Barton's misconduct, this claim must again be dismissed.

*(c) Count III: Gross Negligence*

Under New York law, a claim for gross negligence, like ordinary negligence, requires breach of a legal duty. See Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). Accordingly, this claim fails for the same reason it was dismissed in the prior Order: plaintiff has not established that the Diocese had a duty to protect him from Barton.

In the gross negligence section of the Second Amended Complaint, plaintiff alleges that the Diocese owed him a duty because of the monetary tithing paid by his family as parishioners to the Catholic Church. 2AC ¶ 105. Even assuming plaintiff was indeed a Catholic parishioner, the claim that the Roman Catholic Diocese of *Brooklyn* owed him a duty of care based on contributions made to the Catholic Church *at large* is too attenuated to establish legal duty.

Moreover, plaintiff's Complaint fails to allege a breach to support its claim of gross negligence. Gross negligence is "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." AT&T Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996) (cleaned up). Rather than describing specific misconduct by the Diocese, plaintiff merely recites caselaw, alleging that "Defendants breached their duty of care by acting with reckless disregard of the safety and welfare of plaintiff . . . by failing to properly investigate and report the known and tolerated pedophile activities of their clergy." 2AC ¶ 109. Such conclusory statements and vague group pleading are insufficiently specific in alleging that the Diocese had knowledge of Barton's propensities. As such, this claim must be dismissed.

## CONCLUSION

Plaintiff has not resolved the issues raised in the prior Order. Instead, he continues to rely on generalized allegations to ascribe knowledge to the Diocese without providing any factual support. While the Court acknowledges the gravity of plaintiff's accusations, his claims against the Diocese are legally deficient. The Diocese's motion to dismiss is GRANTED.

SO ORDERED.

Dated:  Brooklyn, New York                           /s/ Raymond J. Dearie
       August 5, 2022                                    RAYMOND J. DEARIE
                                                                             United States District Judge